IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01650-MJW

JERRY L. CHASE,

      Applicant,

v.

RANDY LIND, Warden, Arkansas Valley Correctional Facility, and
JOHN SUTHERS, Attorney General, State of Colorado,

      Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

**MICHAEL J. WATANABE**

**United States Magistrate Judge**

      This case is before this Court pursuant to the Order of Reference entered May 8, 2015, and the parties' unanimous consent to disposition of this action by a United States Magistrate Judge.

      Applicant Jerry L. Chase is a prisoner in the custody of the Colorado Department of Corrections.  Mr. Chase has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 1) ("the Application") challenging the validity of his conviction and sentence in Grand County District Court case number 08CR147. Respondents have filed an Answer to Application for Writ of Habeas Corpus (Docket No. 26) ("the Answer") and Mr. Chase has filed Applicant's Traverse to Respondents' Answer (Docket No. 28) ("the Traverse").  After reviewing the record, including the

Application, the Answer, the Traverse, and the state court record, the Court FINDS and

CONCLUDES that the Application should be denied and the case dismissed with

prejudice.

## I.  BACKGROUND

Mr. Chase was charged with various offenses for sending a series of threatening

e-mails to a number of recipients after an eviction notice was posted on the door of his

apartment.  The Colorado Court of Appeals described the factual background and

procedural history as follows:

> From 2002 to 2008, Chase resided in Wapiti
> Meadows, a low-income housing complex in Grand County,
> Colorado, where he met the three named victims in this
> case: G.B., D.D., and M.G.  G.B. lived at Wapiti Meadows
> and was its property manager at the time of the charged
> crimes; D.D. was its former property manager; and M.G. was
> the maintenance supervisor at the time.  M.G. and D.D. were
> also husband and wife.
>
> During his tenancy, Chase made frequent complaints
> to D.D., G.B., and M.G. regarding his next-door neighbors,
> the B. family.  He complained about the family's ethnicity and
> alleged that they were purposefully making noise to disturb
> him.  In September 2008, Mr. B. accused Chase of putting
> sugar in his gas tank.  Chase was charged with criminal
> mischief, and the district court entered a restraining order
> against Chase.[1]  Chase violated the order by banging on the
> B. family's wall and yelling an ethnically charged threat at
> them.
>
> > [1]Chase was later acquitted of the charge of
> > criminal mischief, and the restraining order was
> > introduced at the trial in this case for the limited
> > purpose of providing a context for the charges
> > against Chase here.
>
> Based on these events, the Wapiti Meadows
> management evicted Chase on October 1, 2008.  G.B.
> posted the eviction notice on his door.  On October 2, 2008,

Chase sent an e-mail to G.B. asking her how he could fight the eviction.  He also indicated that he had gone to Boston for a time, which G.B. knew that he did every year.  G.B. told Chase she could not offer him any legal advice.

On the evening of October 6, 2008, Chase sent an e-mail to twenty-three recipients, including G.B., M.G., and D.D.  Chase was in Boston at the time.  The e-mail was sent to G.B.'s work e-mail address and M.G.'s and D.D.'s personal e-mail addresses.  It stated:

> I am 60 years old.  I did 14 years in Walpole, MA for arson.  Do NOT FUCK WITH ME. REMOVE THE FUCKING EVICTION NOTICE YOU FUCKING ASSHOLES.  YOU BETTER PUT ME AWAY FOR LIFE MOTHERFUCKERS, OR THERE WILL BE HELL TO PAY.  THAT SOVIET ASSHOLE [referring to MR. B.].  HOW DARE YOU!!!! REMOVE THAT FUCKING NOTICE NOW!!!!!!!!!!

In the early morning of October 7, 2008, Chase sent a second e-mail to thirty-four recipients, including G.B., M.G., and D.D., the three of whom were specifically mentioned in the e-mail.  He wrote, in pertinent part:

> Kicking a 60 year-old man out of his apartment because of one Soviet immigrant?  Fuck You!!  THAT IS EVIL.  YOU PIECES OF SHIT.  That's a *death sentence*. . . .  "To those whom evil is done, do evil in return."  I hate the womb that bore you assholes life!! DO EVIL TO ME WILL YOU?  You pieces of shit – from that ugly-ass housing officer[], to those cunts [D.D.] and [G.B.], to Mr. "thinks he's a badass" [M.G.], I won't take a death sentence lying down . . . PS: TAKE THE EVICTION NOTICE DOWN *NOW*.

Twenty-five minutes later, Chase sent the group a third e-mail, which included a photograph of a man pointing a gun at a judge.  It demanded that the eviction notice be removed and stated:

> SOMEONE'S GOING TO GET HURT, OR WORSE!!!!!  DO YOU UNDERSTAND?  SOMEONE

IS GOING TO GET HURT.  IT'LL PROBABLY BE ME
– no it *will* be me – BUT WHAT HAVE I GOT TO
LOSE?  I WILL NOT GIVE UP MY APARTMENT
WITHOUT A SERIOUS FIGHT.

Twenty-five minutes later, Chase sent a fourth e-mail to the
group, again specifically referring to D.D. and G.B. and
stating:

I've got NOTHING TO LOSE, YOU PIECES OF SHIT.
I HATE THE LORD GOD FOR GIVING YOU
LIFE!!!!!!!!!  cc: CUNT-ASS [D.D.]
CUNT-ASS [G.B.]
*TAKE THE EVICTION NOTICE OFF MY DOOR*
Your [sic] playing a *very, very*, dangerous game of
bluff with me.

Twenty minutes later, Chase sent the group a fifth e-mail
criticizing the legal system, and then forty minutes later he
sent them a sixth and final e-mail, stating:

Better check out my football pictures at [Chase's
myspace.com address.]  I will headbutt someone, and
I can and will kick as you can see from my yoga
pictures.  Someone, I don't really know who – nor do I
care – is playing a very dangerous game of bluff with
me.

Although they lived in Grand County, M.G. and D.D.
were in Baltimore, Maryland, visiting family when they
opened and read the six e-mails in one sitting on October 7.
They intended to (and did) return to Colorado a few days
later, and evidence at trial showed they believed Chase was
in Colorado when he sent the e-mails.  M.G. called G.B. in
Colorado to warn her of the e-mails, because he feared for
her safety, and she then went to the Winter Park police
station to open and read the six e-mails from Chase.

Chase was charged with three felony counts of
stalking under former section 18-9-111(4)(b)(II) (now codified
at section 18-3-602(1)(b), C.R.S. 2012).  At Chase's request,
the trial court also instructed the jury on the lesser
nonincluded offense of misdemeanor harassment by
computer, section 18-9-111(1)(e), C.R.S. 2012.  After a two-
day jury trial, the jury convicted Chase of three counts of

> felony stalking, one for each of the three named victims.  He
> was also convicted of the three misdemeanor counts of
> harassment by computer.  The court sentenced Chase to the
> maximum presumptive sentence of four years on each of the
> felony counts, ordering that the sentences run consecutively,
> for a cumulative prison sentence of twelve years.

*People v. Chase*, No. 09CA1908, slip op. at 1-5 (Colo. App. Mar. 14, 2013) (Docket No.

9-3 at 2-6) (footnote omitted).  The judgment of conviction and the sentences imposed

were affirmed on direct appeal.  *See id.*  On April 7, 2014, the Colorado Supreme Court

denied Mr. Chase's petition for writ of certiorari on direct appeal.  (*See* Docket No. 9-5.)

The Application was filed on June 12, 2014.  In claim 1 Mr. Chase contends the

evidence was insufficient to prove beyond a reasonable doubt (a) that he made a

credible threat to the named victims and (b) that subsequent communications were

repeated or in connection with any threat.  He contends in claim 2 that there was

insufficient evidence to establish subject matter jurisdiction for counts two and three

because no part of those offenses was committed in the State of Colorado.  He

contends in claim 3 that his rights under the Due Process, Equal Protection, and Double

Jeopardy Clauses were violated because the trial court failed to respond directly to a

jury question about subject matter jurisdiction.  Finally, he contends in claim 4 that § 18-

9-111(4)(B)(II) of the Colorado Revised Statutes is unconstitutional as applied because

(a) the email communications are protected by the First Amendment and (b) his right to

equal protection was violated.  The Court previously entered an Order to Dismiss in Part

(Docket No. 22) dismissing claim 3 as unexhausted and procedurally barred and

dismissing claim 4(b) because Mr. Chase conceded the claim does not raise a

cognizable federal constitutional issue.  Therefore, only claims 1(a), 1(b), 2, and 4(a)

remain to be considered on the merits.

## II.  STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Chase liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Chase bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Chase seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or similar
> to the case *sub judice*.  Although the legal rule at issue need
> not have had its genesis in the closely-related or similar
> factual context, the Supreme Court must have expressly
> extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry under § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id.* at
> 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an

objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the

7

relevant state-court decision applied clearly established federal law erroneously or

incorrectly.  Rather that application must also be unreasonable." *Id.* at 411.  "[A]

decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  [I]t is not an unreasonable
> application of clearly established Federal law for a state court
> to decline to apply a specific legal rule that has not been
> squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation

omitted).  In conducting this analysis, the Court "must determine what arguments or

theories supported or . . . could have supported[] the state court's decision" and then

"ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before

the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct.

1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking

8

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Chase bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's

verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. MERITS OF APPLICANT'S REMAINING CLAIMS

#### A. Claims 1(a) and 1(b)

Mr. Chase contends in claim 1 that the evidence was insufficient to prove beyond a reasonable doubt (a) that he made a credible threat to the named victims and (b) that subsequent communications were repeated or in connection with any threat. Mr. Chase specifically contends in support of claim 1(a) that he did not make a credible threat to the named victims because he sent the e-mails to a group of recipients and he did not direct a credible threat to any specific individual or group of individuals. He specifically contends in support of claim 1(b) that his subsequent communications were not repeated in connection with a credible threat because all of the e-mails were sent within a span of twelve hours and the named victims opened and read all of the e-mails at one time. Finally, Mr. Chase argues there was insufficient evidence to find him guilty of

10

felony stalking because his e-mail communications are not the sort of stalking described in the legislative findings and declaration of the felony stalking statute.  *See* Colo. Rev. Stat. § 18-3-601.

The proper standard for sufficiency of the evidence, which was clearly established when Mr. Chase was convicted, is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson* the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  "Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law."  *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16).  To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).  "Sufficiency of the evidence is a mixed question of law and fact."  *Maynard*, 468 F.3d at 673.  The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts."  *Id.*

The Colorado Court of Appeals applied this clearly established federal law in addressing Mr. Chase's insufficient evidence claims.  In doing so, the state court initially

set forth the elements necessary to support a conviction for stalking under Colorado law.

> Pursuant to section 18-9-111(4)(b)(II), as pertinent here, a person commits stalking if he or she knowingly makes a credible threat to another person and, in connection with that threat, repeatedly makes any form of communication with that person.  A credible threat is
>
>> a threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety or the safety of his or her immediate family or of someone with whom the person has or has had a continuing relationship.  Such threat need not be directly expressed if the totality of the conduct would cause a reasonable person such fear.
>
> § 18-9-111(4)(c)(II).  Conduct "in connection with" a credible threat means "acts which further, advance, promote, or have a continuity of purpose, and may occur before, during, or after the credible threat."  *People v. Carey*, 198 P.3d 1223, 1232 (Colo. App. 2008) (quoting § 18-9-111(4)(c)(I)); *see also Suazo*, 87 P.3d at 126-27.  "Repeated" or "repeatedly" means "on more than one occasion."  § 18-9-111(4)(c)(IV).  Consequently, "per victim, stalking can occur only when there is conduct comprising two or more occurrences of the specified acts."  *People v. Herron*, 251 P.3d 1190, 1194 (Colo. App. 2010).

(Docket No. 9-3- at 26-27.)  The Colorado Court of Appeals then reasoned as follows in

concluding the evidence was sufficient to support Mr. Chase's convictions for stalking

under Colorado law:

> We first reject Chase's contention that the evidence was insufficient to prove that he made a credible threat.
>
> On review, we must consider whether Chase's conduct constituted a threat that would "cause a reasonable person to fear" for his or her safety.  Chase's first e-mail refers to his past conviction for arson and then states, "Do NOT FUCK WITH ME. . . . YOU BETTER PUT ME AWAY FOR LIFE MOTHERFUCKERS OR THERE WILL BE HELL TO PAY."  Subsequent e-mails state that "SOMEONE IS GOING TO GET HURT OR WORSE," that Chase has

12

"NOTHING TO LOSE," and that he will "headbutt" and "kick" someone.  Two of the e-mails make specific reference to the named victims.  G.B. testified that, based on the e-mails, she feared for her and her family's safety, and as a precaution she did not go to work for three days and pulled her child out of school.  M.G. testified that he feared for his and his family's safety (including his wife, D.D.) to the point that he bought a gun when he returned to Colorado.  He also testified that he feared for G.B.'s safety.  D.D. testified that she felt "threatened" by Chase's e-mails and "took it personally" that the violent language in the e-mails indicated something could happen to her, her husband (M.G.), and the other recipients of the e-mails.

We conclude that the evidence was more than sufficient for the jury to find that Chase's e-mails, with their implicit and explicit threats, would cause a reasonable person to be in fear for his or her safety, or the safety of other persons, as set forth in section 18-9-111(4)(b)(II), and thus, constitute a credible threat.

We also reject Chase's contention that he did not make repeated communications in connection with a credible threat because the three named victims opened and read all the e-mails in one sitting.  The e-mails represent six separate and individual communications to the victims made over a period of two days.  Under the plain language of the statute, once a credible threat was established (as the jury could have concluded regarding Chase's first e-mail), there was sufficient evidence of at least two additional communications that could have caused the victims to be in fear for their safety.  *See* 18-9-111(4)(c)(IV) (defining the terms "repeated" or "repeatedly").  We agree with the People that nothing in the statute indicates that Chase should be relieved of criminal liability simply because the three named victims did not retrieve each of the e-mails the moment they were delivered.  Further, there is no additional statutory requirement that the repeated communications must occur over a specific time period.  Indeed, under section 18-9-111(4)(c)(I), conduct in connection with "a credible threat may occur before, during, or after the credible threat itself." Accordingly, we conclude that six communications in two days constitute repeated communications in connection with the credible threat, regardless of whether the victims became aware of the communications as they occurred, or in one

sitting. *See Herron*, 251 P.3d at 1194 (contact was considered a separate incident even though defendant observed the victim without her noticing, and then informed her of the contact at a later time); *Carey*, 198 P.3d at 1223 (three contacts over five days constituted repeated conduct).

We also conclude that the repeated communications in Chase's e-mails were clearly "in connection with" the credible threat because they were acts that furthered, promoted, or had a "continuity of purpose." *See Carey*, 198 P.3d at 1232. Four of the e-mails referred specifically to Chase's demand that the eviction notice be removed, two of the e-mails referred to the victims by name, and all six e-mails referred to a specific or implicit intended retaliation. Based on these repeated statements, the e-mails more than adequately reflect a continuity of purpose. *See People v. Cross*, 114 P.3d 1, 5 (Colo. App. 2004) (credible threat existed even though perpetrator never said anything to the victim and merely observed her), *rev'd on other grounds*, 127 P.3d 71 (Colo. 2006).

In sum, we conclude the evidence was sufficient for the jury to find beyond a reasonable doubt that Chase committed the offense of felony stalking, as set forth in section 18-9-111(4)(b).

(Docket No. 9-3 at 28-31.)

Mr. Chase does not contend that the decision of the Colorado Court of Appeals is contrary to *Jackson*. In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case. *See House*, 527 F.3d at 1018.

Mr. Chase also fails to demonstrate the state court's ruling was based on an unreasonable determination of the facts or is an unreasonable application of *Jackson*. With respect to claim 1(a), in which Mr. Chase contends he did not make a credible threat to the named victims because he sent the e-mails to a group of recipients and he did not direct a credible threat to any specific individual or group of individuals, he fails to

demonstrate the state court unreasonably determined there was sufficient evidence that his e-mails to the named victims contained a credible threat as that term is defined under Colorado law.  The fact that Mr. Chase sent the e-mails to a number of additional recipients who were not named as victims does not alter this conclusion.  To the extent Mr. Chase's claim is premised on an alternative interpretation of state law, the state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76.

Similarly with respect to claim 1(b), the state court's interpretation of "repeated communications in connection with a credible threat" under Colorado law is binding on this Court.  *See id.*  The evidence at trial demonstrated, and Mr. Chase does not dispute, that he sent a series of six e-mails to a number of recipients including the named victims over the course of approximately twelve hours.  In light of this undisputed evidence, it was not unreasonable for the state court to conclude Mr. Chase made repeated communications in connection with a credible threat even though the named victims opened and read all of the e-mails at one time.

Finally, the Court rejects Mr. Chase's argument that there was insufficient evidence to find him guilty of felony stalking because his e-mail communications are not "stalking" as that term is described in the legislative findings and declaration relevant to the felony stalking statute.  The Court reiterates that the state court's interpretation of state law "binds a federal court sitting in habeas corpus," *Bradshaw*, 546 U.S. at 76, and the description of stalking in the legislative findings and declaration is not an element of the offense that must be proven in order to support a conviction.  In addition, Mr. Chase's argument ignores the plain statutory language.  Mr. Chase was convicted of

15

felony stalking under Colo. Rev. Stat. § 18-9-111(4)(b)(II), which currently is codified at Colo. Rev. Stat. § 18-3-602(1)(b).  (*See* Docket No. 9-3 at 6.)  The legislative findings and declaration on which Mr. Chase relies provide that "[a]lthough stalking often involves persons who have had an intimate relationship with one another, it can also involve persons who have little or no past relationship."  Colo. Rev. Stat. § 18-3-601.

Ultimately, the Court finds that Mr. Chase is not entitled to relief with respect to either claim 1(a) or claim 1(b) because he fails to demonstrate the state court ruling "was so insupportable as to fall below the threshold of bare rationality" required under *Jackson*.  *Coleman*, 132 S. Ct. at 2065.  As a result, the Court cannot conclude that the state court's rejection of claims 1(a) and 1(b) "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

## B.  Claim 2

Mr. Chase contends in claim 2 that there was insufficient evidence to establish subject matter jurisdiction for counts two and three, the felony stalking counts regarding M.G. and D.D., because no part of those offenses was committed in the State of Colorado.  Mr. Chase asserts in the Traverse that the misdemeanor harassment counts pertinent to M.G. and D.D. also must be vacated for the same reason.  It is undisputed that Mr. Chase was in Boston when he sent the e-mails and that M.G. and D.D. were in Baltimore when they opened and read the e-mails.

"Absence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause."  *Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) (citing *Danforth v. Minn.*, 552 U.S. 264

(2008)).  In order to determine whether the evidence to establish jurisdiction was

sufficient, the Court applies the same test from *Jackson* discussed above in connection

with claims 1(a) and 1(b).  Thus, "the relevant question is whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*,

443 U.S. at 319.

The Colorado Court of Appeals began its review of this insufficient evidence claim

by discussing the applicable statutory authority relating to jurisdiction over criminal

offenses in Colorado.

> As pertinent here, section 18-1-201, provides as follows:
>
> (1) a person is subject to prosecution in this state for an offense which he commits, by his own conduct . . . if:
>
> > (a) The conduct constitutes an offense and is committed either wholly or partly within the state.
>
> Section 18-1-201(2), C.R.S. 2012 provides, in pertinent part: "An offense is committed partly within this state if conduct occurs in this state which is an element of an offense or if the result of conduct in this state is such an element.

(Docket No. 9-3 at 9-10.)  The Colorado Court of Appeals then analyzed the sufficiency

of the evidence to prove that Mr. Chase committed at least part of the conduct included

as an element of felony stalking in Colorado.

> Chase contends that, because he wrote and sent the e-mails in Boston, and because M.G. and D.D. opened the e-mails in Baltimore, none of the conduct occurred in Colorado. However, we conclude that the key analysis on the facts here is not where the e-mails were written or read, but rather

whether the result of Chase's conduct, namely, causing a reasonable person to be in fear for his or her safety, occurred, at least in part, in Colorado.

It is a question for the fact finder whether there actually existed a credible threat in Colorado. *See People v. Baer*, 973 P.2d 1225, 1230 (Colo. 1999). At trial, the jury was properly instructed that Chase was charged with committing three counts of stalking in Grand County, Colorado, and that the jury had to determine as an element of the stalking counts that Chase committed the offense "in the State of Colorado."

Based on our review of the record, we conclude that there is sufficient evidence to establish that the threats made by Chase in the e-mails would have caused a reasonable person in the position of M.G. and D.D. to be in fear for their own safety and the safety of other persons in Colorado. Testimony at trial showed that (1) Chase did not know that either M.G. or D.D. was in Baltimore at the time, but he knew that they lived in Colorado; (2) Chase knew where M.G. and D.D. lived in Colorado; (3) M.G. and D.D. knew that they would be returning to Colorado; (4) Chase lived in Colorado; and (5) the conduct Chase demanded from the victims (removing the eviction notice) necessarily had to occur in Colorado. Further, the jury could reasonably infer that Chase would have to be in Colorado to determine whether the eviction notice had been removed, and, thus, his threatened retribution against the victims would occur in Colorado.

M.G. and D.D. both testified at trial that Chase's threats caused them to be in fear for their own safety and for the safety of each other in Colorado, as well as for the safety of other people in Colorado. Thus, M.G. testified that, upon reading the e-mails while he was in Baltimore, he "was alarmed and concerned for the safety of [his] home, which was 1700 miles away, and the safety of some other people who are mentioned in the e-mail," including his mother and D.D.'s mother, who both lived in Colorado. M.G. called G.B. in Colorado, because he feared for her safety, encouraging her to go to the authorities and avoid Wapiti Meadows. He then called his neighbor in Colorado and asked him to "keep an eye out" on his house and automobiles. He also called his house-sitter and warned her to not go to his house alone.

D.D. testified that the e-mails were threats to her, and that something could be done to her and M.G.

These circumstances are similar to those in *People v. Jacobs*, 91 P.3d 438, 442 (Colo. App. 2003). There, the defendant sent e-mails soliciting a child prostitute which were received and read in California. Nonetheless, a division of this court held that Colorado had jurisdiction over the case because the e-mails indicated that the defendant sought to meet with a prostitute in Colorado, identified Colorado as the place where the illegal sex acts would occur, and indicated that he lived in Colorado. *Id.*; *see also People v. Martinez*, 37 Colo. App. 71, 73, 543 P.2d 1290, 1292 (1975) (by enacting section 18-1-201, "Colorado has modified the common law rule of limited territorial jurisdiction by enlarging its power to prosecute crimes that may originate outside the state"). Similarly, here, even though the e-mails were read outside Colorado, the credible threat which caused the victims to be in fear for their safety occurred, at least in part, in Colorado.

We also conclude that Chase's conduct of making a credible threat occurred at least partly in Colorado because he sent his e-mail messages to e-mail addresses associated with individuals he knew to reside in Colorado. Although e-mail addresses can be accessed from any locale, as occurred here when M.G. and D.D. accessed their e-mail accounts in Baltimore, Chase used their personal e-mail addresses to communicate with individuals he knew lived in Colorado. *See Kirwan v. State*, 96 S.W.3d 724, 731 (Ark. 2003) (e-mail addresses of Arkansas residents were considered to be "located in Arkansas"); *see also Strassheim v. Daily*, 221 U.S. 280, 285 (1911) ("[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power"). Contrary to Chase's argument, the reasoning in *Strassheim* has been applied broadly to a wide variety of facts in other jurisdictions. *See Ford v. United States*, 616 A.2d 1245, 1251-52 (D.C. 1992) (relying on *Strassheim* to support jurisdiction over a defendant who committed offenses in Maryland as part of attempt to obstruct justice in the District of Columbia); *State v. Meyers*, 825 P.2d 1062, 1064 (Haw. 1992) (citing *Strassheim* as support for state court

19

jurisdiction over threatening phone calls originating from outside the state); *People v. Aspy*, 808 N.W.2d 569, 573 (Mich. Ct. App. 2011) (relying on *Strassheim* to hold that Michigan had territorial jurisdiction over conduct committed in another state that was intended to have a detrimental effect within the state); *Jaynes v. Commonwealth*, 666 S.E.2d 303, 307 (Va. 2008) (relying on *Strassheim* as support for the principle that "a state may exercise jurisdiction over criminal acts that are committed outside the state but are intended to, and do in fact, produce harm within the state"); Terrence Berg, *State Criminal Jurisdiction in Cyberspace: Is There a Sheriff on the Electronic Frontier?*, 79 Mich. B.J. 659, 660-61 (2000) (analyzing various state jurisdictional statutes, and noting that Colorado, in section 18-1-201, has codified the bases of its jurisdiction similar to the *Strassheim* test).

Under these circumstances, we conclude Chase should not be the beneficiary of the coincidence that M.G. and D.D. were physically in Baltimore when they read the e-mails Chase intended for them to receive and act on in Colorado. Rather, the evidence in the record, when considered in the light most favorable to the prosecution, is, in our view, sufficient to establish that Chase committed the offense of felony stalking in Colorado, consistent with section 18-1-201.

Accordingly, we conclude that the trial court did not err when it ruled that Colorado had jurisdiction over the felony stalking counts relating to D.D. and M.G.

(Docket No. 9-3 at 11-17.)

Mr. Chase does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case. *See House*, 527 F.3d at 1018. Therefore, he fails to demonstrate the decision of the Colorado Court of Appeals is contrary to *Jackson*.

Mr. Chase also fails to demonstrate the state court's ruling was based on an unreasonable determination of the facts or is an unreasonable application of *Jackson*. According to Mr. Chase, the state court's analysis focusing on the subsequent emotional

reaction of M.G. and D.D. after returning to Colorado is not sufficient to establish subject matter jurisdiction because his only conduct, sending the e-mails, and the immediate impact of that conduct occurred outside of Colorado. However, the Court agrees with the Colorado Court of Appeals that Mr. Chase's e-mails contained a credible threat of future retribution that caused M.G. and D.D. to be in fear for their safety in Colorado. Mr. Chase's contention that proof of a detrimental effect on the victim is not an element of stalking statute ignores the fact that the existence of a "credible threat" is an element of the felony stalking statute and that a "credible threat" is "a threat, physical action, or repeated conduct that would cause a reasonable person to be in fear for the person's safety or the safety of his or her immediate family or of someone with whom the person has or has had a continuing relationship." Colo. Rev. Stat. § 18-3-602(2)(b). The undisputed fact that Mr. Chase sent the threats to e-mail addresses he knew to be associated with persons who reside in Colorado also demonstrates the existence of sufficient evidence to establish that the trial court properly exercised subject matter jurisdiction. As the state court noted, "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power." *Strassheim v. Daily*, 221 U.S. 280, 285 (1911).

In summary, Mr. Chase fails to demonstrate the state court's conclusion that there was sufficient evidence to establish subject matter jurisdiction "was so insupportable as to fall below the threshold of bare rationality" required under *Jackson*. *Coleman*, 132 S. Ct. at 2065. Thus, Mr. Chase is not entitled to relief with respect to claim 2 because the state court's rejection of that claim was not "so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

## C.  Claim 4(a)

Mr. Chase contends in claim 4(a) that § 18-9-111(4)(B)(II) of the Colorado

Revised Statutes is unconstitutional as applied because the e-mail communications

were not true threats to any particular individual or group of individuals and, as such, are

protected by the First Amendment.  According to Mr. Chase, "the communications can

be collectively labeled as insults, obscenities, taunts, and challenges, all of which were

an expression of the petitioner's frustration with events surrounding his eviction notice"

and that, because he sent the e-mails to multiple recipients including members of the

media, the e-mails "cannot be interpreted as anything but hyperbole."  (Docket No. 1 at

23.)  Mr. Chase asserts in the Traverse that this First Amendment argument also applies

to the misdemeanor harassment counts.

The clearly established federal law pertinent to Mr. Chase's First Amendment

claim is found in *Virginia v. Black*, 538 U.S. 343 (2003).  As the Supreme Court

recognized in *Black*, "[t]he protections afforded by the First Amendment . . . are not

absolute" and "the government may regulate certain categories of expression consistent

with the Constitution."  *Id.* at 358.  Thus, it is constitutionally permissible for the

government to ban a "true threat."  *Id.* at 359

> "True threats" encompass those statements where the
> speaker means to communicate a serious expression of an
> intent to commit an act of unlawful violence to a particular
> individual or group of individuals.  The speaker need not
> actually intend to carry out the threat.  Rather, a prohibition
> on true threats protects individuals from the fear of violence
> and from the disruption that fear engenders, in addition to

22

> protecting people from the possibility that the threatened
> violence will occur.

*Id.* at 359-60 (internal citations, quotation marks, and alteration omitted).  Whether a statement constitutes a "true threat" must be considered "in context," taking into account such factors as whether the statement was expressly conditional and what reaction it evoked from the listeners.  *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam).

The Colorado Court of Appeals applied this clearly established federal law and rejected the First Amendment claim for the following reasons:

> Chase argues that section 18-9-111(4)(b)(II) is unconstitutional as applied to him because his e-mail communications did not constitute "true threats," but were instead protected speech under the First Amendment.  We disagree.
>
> Chase preserved this argument by making it in his motion for judgment of acquittal.  The trial court rejected his argument, and we discern no error in the trial court's ruling.
>
> While the First Amendment protects the right to free speech, its protection is not absolute.  *Stanley*, 170 P.3d at 786 (citing *Virginia v. Black*, 538 U.S. 343, 358 (2003)).  Some categories of speech, such as "true threats," are unprotected by the First Amendment and, thus, may be regulated by the government.  *Id.* (citing *Black*, 538 U.S. at 358-59); *see Watts v. United States*, 394 U.S. 705, 707 (1969).
>
> A threat is a statement of purpose or intent to cause injury or harm to the person, property, or rights of another, by the commission of an unlawful act.  *McIntier*, 134 P.3d at 472 (citing *People v. Hickman*, 988 P.2d 628, 637 (Colo. 1999)).  The critical inquiry here is "whether the statements, viewed in the context in which they were spoken or written, constitute a 'true threat.'"  *Id.* (quoting *Janousek*, 871 P.2d at 1198).  A true threat is not merely talk or jest, and is evaluated "by

23

whether those who hear or read the threat reasonably consider that an actual threat has been made." *Id.* (quoting *Janousek*, 871 P.2d at 1198).

While whether a statement is a true threat is a question of fact to be determined by the fact finder, *id.* at 474, where First Amendment concerns are implicated, the court has an obligation to make an independent review of the record to assure that the judgment does not impermissibly intrude on the field of free expression. *Stanley*, 170 P.3d at 790. In this determination, we first consider the plain import of the words used. *Id.* (citing *Janousek*, 871 P.2d at 1195). We must also consider the context in which the statements were made. *Id.* (citing *McIntier*, 134 P.3d at 472). Some of the contextual factors that may be considered include (1) to whom the statement is communicated; (2) the manner in which the statement is communicated; and (3) the subjective reaction of the person whom the statement concerns. *Id.* (citing *Watts*, 394 U.S. at 708).

At trial, and as requested by Chase, the jury was instructed to consider whether Chase's e-mails constituted true threats, and Chase's counsel urged the jury to acquit Chase on the basis that his e-mails were not true threats and were, thus, entitled to First Amendment protections.

In that regard, the jury was instructed as follows:

While the First Amendment to the United States Constitution, and provisions of the Colorado Constitution, protect the right of free speech, its protection is not absolute. Freedom of speech does not protect a statement that a reasonable speaker and a reasonable recipient would perceive as a threat of harm, and this is so even though the speaker may not have intended the recipient to perceive a threat. True threats, however communicated, are not protected by the First Amendment. To determine whether a statement or statements are "true threats" you may consider: the plain import of the words and the context in which they are made. The context may include consideration of: (1) to whom the statement is communicated, and (2) the manner in which the statement is communicated, and (3) the subjective reaction of the person whom the statement concerns.

24

A true threat must be . . . unequivocal, unconditional, immediate and specific as to the person threatened.

True threats contain a gravity of purpose and likelihood of execution and go beyond protected, vehement, caustic or unpleasant sharp words. You may however also consider the forceful language of the statement and explicit and implicit threat(s) expressed thereby.

The jury decided, as a matter of fact, that the e-mails constituted true threats and convicted Chase of felony stalking. Based on our independent review of the record, we conclude that Chase's communications constituted true threats, and were "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Stanley*, 170 P.3d at 786 (quoting *Black*, 538 U.S. at 359). Besides the overall forceful and violent language and imagery used in the e-mails, Chase referred to his prior conviction for arson and stated specifically, "Do NOT FUCK WITH ME. . . . YOU BETTER PUT ME AWAY FOR LIFE MOTHERFUCKERS, OR THERE WILL BE HELL TO PAY," as well as, "I will headbutt someone, and I can and will kick." *See Janousek*, 871 P.2d at 1193, 1195 (noting the forceful language of the statement and the explicit and implicit threat expressed thereby); *see also Baer*, 973 P.2d at 1232 (credible threats are not protected by the First Amendment). Chase also expressly referred to the named victims in two of the e-mails. At trial, three named victims testified that they felt very threatened and frightened by the language in the e-mails, and M.G. and G.B. both noted specific precautionary measures that they took to protect themselves. *See Stanley*, 170 P.3d at 790 (one factor considered in identifying a true threat is the subjective reaction of the recipient).

Contrary to Chase's argument that the e-mails cannot constitute true threats because most of them were not directed at a particular individual, a true threat can be directed to a group of individuals. *Id.* at 786. Further, all of the e-mails were sent by Chase to the named victims, and he knew them personally, as well as where they lived. *See id.* (a factor to be considered in identifying a true threat is to whom the statement is communicated).

25

> Considering the plain language of the statements
> Chase made in the e-mails and the context in which those
> statements were made, we conclude that the e-mails
> constituted true threats and that, accordingly, application of
> section 18-9-111(4)(b)(II) to Chase's conduct did not violate
> his First Amendment rights.

(Docket No. 9-3 at 34-38.)

Mr. Chase does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case. *See House*, 527 F.3d at 1018. Therefore, he fails to demonstrate the decision of the Colorado Court of Appeals is contrary to *Black*.

Mr. Chase also fails to demonstrate the state court's decision was an unreasonable application of *Black* or was based on an unreasonable determination of the facts in light of the evidence presented. The question of whether Mr. Chase's e-mails constituted true threats was determined by the jury as a factual matter and the Colorado Court of Appeals agreed based on its independent review of the record. Mr. Chase obviously disagrees with that result, but he concedes that the First Amendment does not protect true threats. (*See* Docket No. 1 at 23.) Therefore, his as-applied challenge turns on whether the evidence presented at trial was sufficient to support the jury's factual determination. *See Agan v. Vaughn*, 119 F.3d 1538, 1544 (11th Cir. 1997) (because habeas petitioner conceded proof of corrupt intent would make his conviction valid under the First Amendment, his as-applied challenge turned on whether there was sufficient evidence of corrupt intent); *see also Medlock v. Ward*, 200 F.3d 1314, 1321-22 (10th Cir. 2000) (rejecting habeas petitioner's as-applied challenge to sentence aggravator because evidence was sufficient to support the constitutionality of the

sentencing court's application of the sentence aggravator).

The Colorado Court of Appeals expressly determined Mr. Chase's e-mails were true threats because they were "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." (Docket No. 9-3 at 37.)  In making this determination the state court relied on the overall forceful and violent language and imagery, the reference to Mr. Chase's prior conviction for arson, the express references to the named victims, and the testimony of the victims that they felt threatened and frightened by the language in the e-mails.  Based on the Court's independent review of the state court record, the Court agrees with the state court's conclusion.  The Court is not persuaded that the e-mail communications in question are protected by the First Amendment simply because the e-mails were addressed to a group of recipients and the threatening nature of the e-mails was not directed at, or may not have been apparent to, some of the recipients who were not named as victims.  Mr. Chase was convicted on three counts of stalking against three specific individuals and, at least with respect to those three individuals, it was not unreasonable to conclude that the e-mails were true threats.  In any event, Mr. Chase falls far short of demonstrating the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  Therefore, Mr. Chase is not entitled to relief with respect to claim 4(a).

## V.  CONCLUSION

In summary, the Court finds that Mr. Chase is not entitled to relief on his remaining claims.  Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (Docket No. 1) is denied and this case is dismissed with prejudice.  It is

further

**ORDERED** that there is no basis on which to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c).

DATED July 23, 2015.

BY THE COURT:


  s/Michael J. Watanabe
MICHAEL J. WATANABE
United States District Judge